**State of Vermont**
**Superior Court — Environmental Division**

=====================================================================
# E N T R Y   R E G A R D I N G   M O T I O N
=====================================================================

**In re Transtar, LLC**                                    **Docket No. 46-3-11 Vtec**
**(Appeal from Town of Dorset Zoning Board of Adjustment decision)**

Title: Motion for Summary Judgment (Filing No. 7)

Filed: January 13, 2012

Filed By: Appellant Transtar, LLC

Response in opposition filed on 2/9/12 by Appellee Town of Dorset

Reply filed on 2/22/12 by Transtar, LLC

Supplement to Reply filed on 2/23/12 by Transtar, LLC

___ Granted                    ___ Denied                    X  Other

     Transtar, LLC ("Transtar") appeals a decision from the Town of Dorset Zoning Board of Adjustment ("the ZBA") permitting the operation of its preexisting sawmill but prohibiting its existing firewood processing operation without a conditional use permit and prohibiting vehicle repair and maintenance on property Transtar owns in the Town of Dorset, Vermont ("the Town"). The ZBA did not address whether the property is being used as a log transfer station or transshipment center. Now pending before this Court is Transtar's motion for summary judgment.

     The genesis of these proceedings was a complaint, filed by neighbor David Wilson, that the operations at the Transtar site, formerly known as the Bear Paw Lumber site, were occurring in violation of the Town of Dorset Zoning Bylaw ("the Bylaw"). When the acting Zoning Administrator decided that the Transtar operations were a lawful continuation of the prior owners' preexisting use, Mr. Wilson appealed to the ZBA. After the ZBA determined that some, but not all, of Transtar's uses of the property could be defined as lawful, preexisting nonconforming uses, Transtar appealed to this Court.

     We begin our analysis with a review of the applicable summary judgment standard. A court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3) (2011) (amended Jan. 23, 2012)[1]; see also V.R.E.C.P. 5(a)(2). We will "accept as true the [factual] allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material," and we will give the non-moving party the

---

[1] We note that an updated version of V.R.C.P. 56 took effect on January 23, 2012. We analyze this motion, however, under the previous version of the rule because that version was in effect at the time the pending motion was filed, and, at any rate, the rule change does not affect our analysis here.

benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356.

In its motion for summary judgment, Transtar contends that the uses to which its property is put—uses which it describes as a sawmill operation, a firewood processing operation, vehicle maintenance and repair activities, and a log transfer station or transshipment center—are all lawful, preexisting nonconforming uses.[2] In response, the Town does not dispute that the sawmill operation, the firewood processing operation, and the log transfer station or transshipment center are lawful, preexisting nonconforming uses. The Town disputes only Transtar's contention that the vehicle maintenance and repair activities are also lawful, preexisting nonconforming uses.[3]

### Sawmill Operation, Firewood Processing Operation, and Vehicle Maintenance and Repair

Pursuant to the Bylaw[4], Transtar's property is located in the Agriculture and Rural Residential District. It is undisputed that sawmills and vehicle maintenance and repair are not uses that are allowed in that District. "Firewood/cordwood processing operation that produces twenty or more cords per year" is an allowed conditional use in that District. Bylaw § 4.2.2.12.

Section 10.1.1 of the Bylaw provides that

Any nonconforming use of a building or premises, which was lawfully existing at the time of the adoption of this Bylaw, or any pertinent amendment thereto, may be continued . . . subject to the following regulations:

1. No nonconforming use may be changed, except to a conforming use, or, with the approval of the Zoning Board of Adjustment, to another nonconforming use not more objectionable in character.

Section 10.1.4 further provides that nothing in the Bylaw "shall require the discontinuance of a nonconforming use . . . already lawfully in use prior to the passage of this Bylaw, or amendments thereto."

Thus, to continue to engage in the sawmill operation, the firewood processing operation, and the vehicle maintenance and repair activities, Transtar must show that the activities are lawful, preexisting nonconforming uses. To do so, Transtar must prove (1) that the use existed prior to the ordinance being established; (2) that the use conformed to all laws existing prior to the ordinance being established; and (3) that the use is substantial enough to warrant recognition. In re Transtar, LLC, No. 46-3-11 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Sept. 15, 2011) (Durkin, J.); see also Town of Shelburne v. Kaelin, 136 Vt. 248, 251-52 (1978).

We turn first to the sawmill operation and the firewood processing operation. Transtar has submitted numerous affidavits that demonstrate that the sawmill operation existed prior to the

---

[2] Mr. and Mrs. David Wilson initially submitted a cross-appeal, which they later withdrew. Part of Transtar's motion for summary judgment raises the question of whether this Court retains jurisdiction over the issues raised in that cross-appeal despite its withdrawal. As discussed below, we conclude that Transtar is entitled to summary judgment on these issues for other reasons. We therefore do not reach this jurisdictional question.

[3] Transtar's Statement of Questions is phrased as if this Court is to engage in on-the-record review. However, there is nothing before us that indicates that the Town has adopted such review. We will therefore interpret the Questions as if they were phrased for our de novo review.

[4] The Bylaw first took effect on March 6, 1973.

enactment of the Bylaw on March 6, 1973. The affidavits indicate that firewood processing also occurred on the subject property prior to the Bylaw's enactment. Both of these uses were lawful, as no zoning regulations existed prior to the adoption of the Bylaw. The affidavits also indicate that both the sawmill operation and the firewood processing uses were substantial and were not substantially expanded in the years since the Bylaw was enacted. The Town has submitted nothing to dispute these allegations and has in fact conceded that the uses are lawful, preexisting nonconforming uses. Accordingly, we **GRANT** summary judgment to Transtar in part, concluding as a matter of law that the sawmill operation and the firewood processing operation are lawful, preexisting nonconforming uses.

We next turn our attention to the vehicle repair and maintenance activities. In its motion for summary judgment, Transtar contends that the repair and maintenance of both logging and non-logging vehicles and equipment on the subject property occurred prior to the adoption of the Bylaw and that such repair and maintenance was a lawful activity at the time the Bylaw was adopted. Transtar also argues that such use is substantial enough to warrant recognition. In response, the Town does not contend that no vehicle repair and maintenance occurred on the property prior to the adoption of the Bylaw. Rather, the Town argues that the vehicle maintenance and repair was limited primarily to logging vehicles. It also contends that the maintenance and repair was incidental to the wood processing use of the property and therefore was sufficiently minimal so as not to satisfy the third element of a lawful, preexisting nonconforming use. Both parties have submitted affidavits supporting their arguments.[5]

Therefore, it is undisputed that, prior to the adoption of the Bylaw on March 6, 1973, Transtar engaged in repair and maintenance of logging vehicles and vehicles associated with the wood processing uses of the subject property. However, the Town has submitted an affidavit disputing Transtar's contention that the repair and maintenance of non-logging vehicles also occurred prior to the Bylaw's adoption.

Pursuant to the Bylaw, "[n]o nonconforming use may be changed, except to a conforming use, or, with the approval of the Zoning Board of Adjustment, to another nonconforming use not more objectionable in character." Bylaw § 10.1.1(1). Thus, it is material to our resolution of the pending motion whether the repair and maintenance of vehicles extended to non-logging vehicles and whether this occurred before or after the adoption of the Bylaw. If vehicle repair and maintenance encompassed non-logging vehicles prior to the Bylaw's adoption, it may be a lawful, preexisting nonconforming use. However, if the repair and maintenance extended to non-logging vehicles only after the Bylaw's adoption, Section 10.1.1(1) of the Bylaw may require ZBA approval for the change in use. Because a dispute as to material facts exists, we **DENY** Transtar's motion for summary judgment on the issue of non-logging vehicle repair and maintenance. However, since the Town concedes that Transtar's repair and maintenance of vehicles used in its logging operation lawfully existed prior to the adoption of the Bylaws, we conclude that repair and maintenance of logging vehicles is a lawful, preexisting nonconforming use. We therefore **GRANT** summary judgment to Transtar on that limited use (i.e., repair and maintenance of logging vehicles on the Transtar site).

### Log Transfer Station or Transshipment Center

Finally, we turn our attention to the alleged property use Transtar describes as a log transfer station or transshipment center. As stated above, Transtar argues that this, too, is a lawful,

---

[5] Transtar has filed a motion to strike the affidavit submitted by the Town. However, in an Entry Order also issued today, we deny that motion.

preexisting nonconforming use and seeks a determination from this Court that this use is lawful. We conclude that questions regarding the status of this use are not properly before the Court in this proceeding.

Our jurisdiction in this de novo appeal is limited to addressing those issues that the ZBA had the authority to address when considering Mr. Wilson's original zoning complaint. See In re Torres, 154 Vt. 233, 235–36 (1990) ("The reach of the superior court in zoning appeals is as broad as the powers of a zoning board of adjustment or a planning commission, but it is not broader. . . . [W]hatever the Zoning Board of Adjustment of Planning Commission might have done with an application probably before it, the Superior Court may also do if an appeal is duly perfected."). Here, our review of the ZBA's decision indicates that Transtar never submitted an application to alter or vary the use of the subject property; the only question before the ZBA was Mr. Wilson's complaint. See In re David Wilson, Findings of Fact and Decision, at 2 (Town of Dorset Zoning Bd. of Adjustment Feb. 23, 2011). We thus regard the complaint as dictating the scope of the appeal before the ZBA and this Court. See Torres, 154 Vt. at 235–36.

Although the parties have not provided us with Mr. Wilson's original complaint, it is apparent from the ZBA's decision that in his complaint before the Zoning Administrator, Mr. Wilson did not raise the question of whether the subject property was lawfully being used as a log transfer station or transshipment center. The ZBA, in its decision responding to Mr. Wilson's complaint, refused to address the issue of the log transfer station or transshipment center because the question was not raised in that complaint. Because the ZBA did not have the authority to determine whether the log transfer station or transshipment center was a lawful, preexisting nonconforming use, we also do not possess such authority. Accordingly, pursuant to the guidance of Torres, we decline to address the issue of the log transfer station or transshipment center.

## Conclusion

We **GRANT** Transtar's motion for summary judgment in part, concluding as a matter of law that the sawmill operation, the firewood processing operation, and the maintenance and repair of logging vehicles related to Transtar's operations are lawful, preexisting nonconforming uses. We **DENY** Transtar's motion for summary judgment in part, concluding that a dispute of material facts exists with regard to whether vehicle repair and maintenance included non-logging vehicles and, if so, whether that repair and maintenance occurred prior to the adoption of the Bylaw. We will therefore proceed to trial on that limited issue, unless the parties remaining in this proceeding arrive at a voluntary resolution. The parties are directed to submit their unavailable dates for trial during the period from August 27 through September 28, 2012 by **June 29, 2012.**

_____          ____May 24, 2012_____
          Thomas S. Durkin, Judge                              Date

===============================================================================

Date copies sent to: _____                    Clerk's Initials _____

Copies sent to:

  David R. Cooper, Attorney for Appellant Transtar, LLC

  Joseph J. O'Dea, Attorney for Appellee Town of Dorset