STATE OF VERMONT

SUPERIOR COURT                                        ENVIRONMENTAL DIVISION
Vermont Unit                                               Docket No. 118-8-13 Vtec

---

In re Bay Harbor Marina Inc. Site Plan & Variance Application

---

## ENTRY REGARDING MOTION

Title:              Motion to Dismiss or Alternative Motion for Summary Judgment (Motion 3)
Filer:              SP Cove, LLC d/b/a Bay Harbor Marina, Inc.
Attorney:           Robert F. O'Neill
Filed Date:         October 25, 2013

Response filed on 11/26/2013 by Attorney Nicole A. Killoran for Appellants
Response filed on 12/11/2013 by Attorney Robert F. O'Neill for Appellee SP Cove, LLC d/b/a Bay Harbor Marina, Inc.
Response filed on 12/12/2013 by Attorney Nicole A. Killoran for Appellants

**The motion is DENIED.**

Maurice P. Germain, Jeanne M. Germain, Peter B. Hill, Julia L. Weaver, and The Moorings, Inc. ("Appellants") appeal the August 5, 2013 Town of Colchester Development Review Board ("DRB") decision granting site plan approval and a variance for SP Cove, LLC, d/b/a Bay Harbor Marina, Inc. ("Applicant") to alter its Lake Champlain marina at 278 West Lakeshore Road in the Town of Colchester, Vermont (the "Town"). The DRB decision allows Applicant to reconfigure an existing drive and parking area, reconstruct a one-story harbor master building, demolish and reconstruct a one-story storage building, reconstruct and flood proof a two-story office/facilities building, and add new landscaping. Appellants' Statement of Questions presents five questions for this Court's review. All five questions raise issues as to the adequacy of parking facilities in relation to the number of watercraft served at the marina, and Question 5 raises issues as to impacts on nearby land uses, including noise, fumes, wastewater flows and facilities, and shore-based pump outs.

Applicant now moves to dismiss Appellants for lack of standing, arguing that Appellants did not participate in the DRB proceeding. Alternatively, Applicant moves for summary judgment on all five questions raised by Appellants. Appellants timely opposed both motions.

### Motion to Dismiss

On June 19, 2013, Applicant applied to the DRB for site plan review to complete the above described activities at its marina. (Saba Aff. at ¶ 4, filed Oct. 25, 2013.) On June 27, 2013, the Town of Colchester Planning & Zoning Department issued notice of the DRB's July 24, 2013 public hearing regarding Applicant's proposal. (Applicant's Ex. F, filed Oct. 25, 2013.) On

July 1, 2013, Appellant Maurice Germain hand delivered to the Town of Colchester Planning & Zoning Offices a copy of a letter directed to the Vermont Department of Environmental Conservation ("DEC") stating his concerns about Applicant's application to DEC for a Lake Encroachment Program permit (Germain Aff. at ¶¶ 10–11, filed Nov. 26, 2013); Appellee's Ex. G, filed Oct. 25, 2013.)  This letter states concerns about the project's parking capacity in relation to the number of boats served by the marina.  Id.  Mr. Germain attended the July 24, 2013 DRB hearing at which the DRB approved Applicant's site plan and variance application, but he did not offer testimony at that time.  (Germain Aff. at ¶¶ 15–16); IN RE: SP Cove, LLC, Findings of Fact & Order, at 2 (Town of Colchester Dev. Review Bd. Aug. 5, 2013).

We begin our legal analysis by noting that whether an appealing party has standing affects this Court's subject matter jurisdiction.  Bischoff v. Bletz, 2008 VT 16, ¶ 15, 183 Vt. 235. As such, we review Applicant's motion to dismiss under the standard of review afforded by Rule 12(b)(1) of the Vermont Rules of Civil Procedure, which governs motions to dismiss for lack of subject matter jurisdiction.  In re Goddard Coll. Conditional Use, No. 175-12-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. July 5, 2012) (Walsh, J.).  Therefore, we accept as true all uncontroverted factual allegations and construe them in the light most favorable to the nonmoving party (here, Appellants).  Id.; Rheaume v. Pallito, 2011 VT 72, ¶ 2, 190 Vt. 245.

The standing requirements for appealing a DRB decision are established by statute.  We must therefore ensure that each requirement is satisfied so as not to "judicially expand the class of persons entitled to such [appeal]."  In re Verizon Wireless Barton Permit, 2010 VT 62, 7, 188 Vt. 262 (quoting Garzo v. Stowe Bd. of Adjustment, 144 Vt. 298, 302 (1984)).  To have standing to appeal a DRB decision, a party must be an interested person who participated in the municipal regulatory proceeding.  Id. at ¶ 9; 10 V.S.A. § 8504(b)(1); 24 V.S.A. § 4471(a). Participation consists of "offering, through oral or written testimony, evidence or a statement of concern related to the subject of the proceeding."  24 V.S.A. § 4471(a) (emphasis added).

While "proceeding" is not defined by statute, our Supreme Court has interpreted the term more broadly than a specific hearing on the application.  See In re Appeal of Carroll, 2007 VT 19, ¶¶ 10, 13, 181 Vt. 383.  There, the Court concluded that "the meaning of the phrase 'municipal regulatory proceeding' [was] not sufficiently clear" based on the statutory wording alone, but the municipal subdivision review "proceeding" at issue encompassed the hearings on both preliminary and final plat review.  Id. (citing Black's Law Dictionary 1241 (8th ed. 2004) (defining "proceeding" as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment")).  Moreover, "[t]he statutory language does not specify when the interested party must participate as long as it is within the proceeding."  Id. at ¶ 15.  The proceeding ends with the municipal panel's decision.  Verizon Wireless Barton Permit, 2010 VT 62, ¶ 11.  This Court likewise has noted that the submission of letters regarding an application prior to a hearing on that application constituted participation pursuant to 24 V.S.A. § 4471(a).  In re Verizon Wireless Barton Act 250 Permit Telecomm. Facility, No. 6-1-09 Vtec, slip op. at 6 n.7 (Vt. Envtl. Ct. Feb. 2, 2010) (Durkin, J.).

Mr. Germain submitted written testimony to the Town of Colchester Planning & Zoning Offices on the subject matter of Applicant's marina alterations and parking capacity.  Although

this testimony was in the form of a letter initially directed to DEC in considering Applicant's lake encroachment permit, we find the contents sufficiently "related to the subject of the proceeding" before the DRB to be considered written testimony in that proceeding, particularly in light of the Carroll Court's interpretation of 24 V.S.A. § 4471(a). Mr. Germain's letter raised concerns about a parking deficiency and suggested that the Town should review the parking plan for Applicant's facility. Mr. Germain submitted this testimony to the Town after Applicant filed its application and the DRB issued notice of the hearing on that application, but before the DRB held its hearing and made its decision. Thus, construing the factual allegations in the light most favorable to the nonmoving parties (Appellants), we find that Mr. Germain participated in the municipal regulatory proceeding. Because the parties do not dispute Mr. Germain's interested person status, we find that he has standing in this appeal.

Mr. Germain also asserts that he is an authorized agent for appellant The Moorings, Inc., located adjacent to Applicant's marina. We therefore also conclude that The Moorings, Inc. has standing in this appeal. (Germain Aff. at ¶ 1, filed Nov. 26, 2013.) For these reasons, Applicant's motion to dismiss is **DENIED** as to Mr. Germain and The Moorings, Inc., subject to Mr. Germain providing written confirmation, in the form of a corporate resolution or Board of Directors' action, authorizing him to appear in these proceedings on behalf of The Moorings, Inc. In the event Mr. Germain fails to file this written confirmation with the Court within the next 30 days (i.e.: by **Friday, May 16, 2014**), The Moorings, Inc. will be dismissed as an independent party to these proceedings.

The Court is concerned, however, that the record before us does not presently contain evidence that the remaining three Appellants, Jeanne M. Germain, Peter B. Hill, and Julia L. Weaver, participated in the municipal regulatory proceeding. We do not consider whether these Appellants have standing, however, since neither Applicant nor Appellants provided facts sufficient for our review. Given that this matter has already been set for trial, beginning on May 13, 2014, we direct that each of these three Appellants present facts at trial sufficient to demonstrate their standing. If they fail to do so, we will be obligated to dismiss then as parties.

## Statement of Questions and Scope of Jurisdiction

We next consider whether any of the five Questions raised in Appellants' Statement of Questions should be dismissed. We first address the content and form of Questions 1, 2, and 5 of Appellants' Statement of Questions in relation to our de novo review. "Every court has [the] inherent power to determine whether or not it has jurisdiction of the proceeding before it; it does not matter how the question comes to the court's attention." In re G.R. Enter., Inc. Sign Application, No. 27-2-08 Vtec, slip op. at 2 (Vt. Envtl. Ct. May 12, 2008) (Wright, J.) (citing Woodard v. Porter Hosp., Inc., 125 Vt. 264, 266 (1965)).

Question 1 asks:

Where Bay Harbor has never provided more than 120 slips and 25 moorings, for a total of 145 watercraft berths, but now proposes to increase the number of berths to 225, were the Colchester DRB's findings that the proposed future use will not increase the number of boats served by the marina supported by substantial evidence?

(Statement of Questions at 1, filed Sept. 10, 2013.)

> Question 2 asks:
>
> Where the proposed future use will increase the number of berths from 145 to 225, and where the existing parking facilities can accommodate no more than 117 spaces, were the Colchester DRB's findings that, even though "there is a parking deficiency on the site," the deficiency would not be made worse by the proposed future increase of the number of boats served by the marina, supported by substantial evidence?

(Statement of Questions at 1, filed Sept. 10, 2013.)

"[W]hen considering a zoning permit application in a de novo appeal, we do not consider whether the [municipal body] made an incorrect decision; we hear the evidence anew and decide whether the applicants have met their burden of showing that their proposed project conforms to the applicable ordinance provisions." Smith Boathouse Permit Application, No. 117-8-12 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Mar. 26, 2013) (Durkin, J.) (citing Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989) ("A de novo trial is one where the case is heard as though no action whatever has been held prior thereto.") (internal quotation omitted)). Although the underlying facts raised by these two Questions may be relevant, the Court is unable to construe the Questions as asking a legal question appropriate for our review. We therefore must **DISMISS** Questions 1 and 2**.**

> Question 5 poses a similar challenge to the DRB's conclusions; it asks:
>
> Where the Subject Property has never served more than 145 watercraft, were the Colchester DRB's conclusions that the proposed use would not violate Sections 2.12(B)(1)(d), 8.07(A)(4), 8.07(A)(13), and 7.03(F)(5)(a)–(e) of the Colchester Zoning Regulations clearly erroneous where the proposed increased future use would impair the use of the bay by nearby marinas and increase the amount of noise, fumes, wastewater flows and facilities, shore-based pump outs, traffic, and parking needs?

(Statement of Questions at 2, filed Sept. 10, 2013.) As phrased, Question 5 likewise poses an inappropriate legal challenge for this de novo proceeding. However, this Question also includes citations to specific provisions of the Town of Colchester Zoning Regulations and appears to assert facts that provide a basis for our independent determination that the project as proposed will not conform to the applicable Regulations. We therefore conclude that Appellants' Question 5 is still appropriate for our review.

Questions 3 and 4 do not challenge the DRB conclusions, but rather assert that the proposed project does not conform to the applicable Town of Colchester Zoning Regulations ("CZR") provisions. (Statement of Questions at 2, filed Sept. 10, 2013.) We therefore conclude that these Questions pose legal issues that we are authorized to address in this de novo review.

## **Motion for Summary Judgment**

We next move to Applicant's request that we grant summary judgment in its favor on all of Appellants' remaining Questions. The three remaining Questions (Questions 3, 4, and 5) raise a common challenge to the appealed application: whether the proposed parking facility complies with the CZR. We first note that we are directed to grant summary judgment if a moving party (here, Applicant) shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). We must "accept as true the [factual] allegations made in opposition to the motion for summary judgment" and give the non-moving party (here, Appellants) the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (citations omitted). Both the party claiming that a material fact is undisputed and the party seeking to establish a dispute of material fact must support their assertions with citations to materials in the record. V.R.C.P. 56(c)(1).

As noted above, Appellants' primary concern with the project is the adequacy of the parking. In reviewing a site plan application, the DRB (and this Court on appeal) "shall consider . . . Off Street Parking, Loading, and Circulation Requirements" as provided in CZR § 10.01. CZR, effective December 21, 2004 and amended Mar. 6, 2013, Art. 8, § 8.07(A)(13). Table 10-2, in CZR § 10.01(O), provides that for the "Marinas & Yacht Clubs" use, the parking requirement is one parking space per boat berth. The earlier Colchester Zoning Bylaw, adopted August 12, 1976 and amended January 9, 1979, provided that "Marinas providing a 100 foot minimum shoreline . . . and one off highway parking space per boat berth" were a conditional use in the "Shoreline Zone" defined as the strip of land extending 500 feet inland from Lake Champlain's normal mean water line. Colchester Zoning Bylaw Art. IX, § 9.11 (1979).

Applicant first argues that it is entitled to summary judgment on all Questions presented because the application before the DRB related only to shore-based buildings and facilities and therefore "the number of watercraft approved for the marina is not a subject of this appeal." (Applicant's Mot. to Dismiss or, in the Alternative, Mot. for Summ. J. at 7–9, filed Oct. 25, 2013.) Next, Applicant notes that it "has not proposed to increase the number of watercraft served above its existing 225 capacity" and its parking arrangement is a preexisting nonconforming use. Id. at 7. Specifically, Applicant argues that its marina has had a permit to serve 225 watercraft since at least 1972, while its parking area has historically served a maximum of 100 vehicles. Applicant asserts that this ratio of permitted watercraft berths to parking spaces predates any parking regulations applicable to marinas in the Town, and therefore it is not required to satisfy a more stringent parking requirement.

Regarding Applicant's first argument, the Court notes that this appeal is limited to the issues before the DRB, namely, whether the proposed shore-based buildings and facilities satisfy the CZR requirements for site plan approval and a variance. See In re Torres, 154 Vt. 233, 235 (1990) ("The reach of the superior court in zoning appeals is as broad as the powers of a zoning board of adjustment or a planning commission, but it is not broader."). It is undisputed that the DRB (and this Court, once this appeal was filed) is without the power to regulate Applicant's water-based activities. Thus, to the extent that the Statement of Questions asks whether solely water-based activities comply with the provisions of the CZR, the

Appellants ask this Court to answer a question that is outside its scope of review. This, however, is not grounds for judgment as a matter of law in Applicant's favor on the remaining issues Appellants raise. As described above, site plan review requires consideration of parking, a shore-based use, pursuant to CZR § 10.01. Although Table 10-2's parking requirements are based upon the number of boat berths on the water, enforcing such a requirement through site plan review does not amount to regulation of water-based activities.

As described above, Applicant argues that to the extent this Court may consider the adequacy of its parking facilities, its parking arrangement is a preexisting nonconforming use that Appellant does not intend to expand. Therefore, Applicant argues, it may proceed with its proposal without providing for additional parking pursuant to Table 10-2 in CZR § 10.01. We note that the applicant in a de novo appeal bears the burden of establishing either that the application complies with all regulations raised in the statement of questions or that its application is exempt from the regulations as a lawful preexisting nonconforming use. See 24 V.S.A. § 4471(a) (providing for a de novo proceeding in the Environmental Division); In re Noyes CU Permit, No. 98-7-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Dec. 12, 2011) (Durkin, J.) (noting that the applicant carries the burden of proof to show that it is entitled to the permit sought in a de novo appeal).

A nonconforming use is a "use of land that does not conform to the present bylaws but did conform to all applicable laws, ordinances, and regulations prior to the enactment of the present bylaws . . . ." 24 V.S.A. § 4303(15). The parties agree that historically, and prior to 1979, Applicant's parking lot has provided space for no more than 100 vehicles while the marina maintained more than 100 berths. Because the parking area did not provide the one parking space per boat berth required by the 1979 Colchester Zoning Bylaw, and the parties do not dispute that the parking area previously complied with all applicable laws, ordinances, and regulations prior to 1979, we conclude that the marina's parking arrangement is a lawful, pre-existing, nonconforming use.

Regarding nonconforming uses, CZR, Art. 2, § 2.12(A) provides:

1.  A nonconforming use shall not be changed to another non-conforming use.
2.  A nonconforming use that is changed to a conforming use shall not be resumed.
3.  A nonconforming use that is discontinued for six (6) months shall not be resumed.
4.  A nonconforming use that is abandoned shall not be resumed.
5.  No extension of a non-conforming use shall be permitted.

Because the only nonconforming use at issue is deficient parking, we conclude that Applicant does not propose changing a nonconforming use to another nonconforming use as described by § 2.12(A)(1). Moreover, Applicant's marina has never provided at least one parking space per boat berth since the adoption of the parking requirement; we therefore conclude that the nonconforming use has not been changed to a conforming use as described by § 2.12(A)(2). As to the remaining three subsections regulating nonconforming uses, however, the parties dispute material facts.

Applicant seems to argue that its nonconforming use should be measured by the approved capacity of 225 watercraft,[1] rather than the number of boat berths in existence.[2]  To be clear, the plain language of the "nonconforming use" definition contemplates an existing <u>use of land</u> rather than a <u>proposed use</u> for which a permit has been granted.  See <u>Colwell v. Allstate Ins. Co.</u>, 2003 VT 5, ¶ 7, 175 Vt. 61 (holding that our paramount goal in construing a statute is to implement the intent of the Legislature and that where the statutory language is plain and unambiguous it should be enforced without resort to statutory construction); see also <u>Town of Shelburne v. Kaelin</u>, 136 Vt. 248, 251 (1978) ("To establish a prior nonconforming use, the use must be <u>in existence</u> prior to and on the day the zoning ordinance is enacted.") (emphasis added).  Meanwhile, however, the Court notes that the parking requirement in both the 1979 Colchester Zoning Bylaw and Table 10-2 of the CZR refers only to the number of parking spaces "per boat berth," <u>not</u> "per boat berth in use."  Thus, we conclude that the CZR requires that we determine what number of boat berths and parking spaces Applicant had in 1979 and compare that to what Applicant now proposes.  See <u>In re Wesco Inc. NOV</u>, No. 106-5-07 Vtec, slip op. at 13–14 (Vt. Envtl. Ct. Mar. 6, 2008) (Wright, J.) ("In order to determine whether a landowner has the right to continue a nonconforming use, it is necessary first to determine when the use was lawful, and then to determine which amendment to the zoning ordinance made the use nonconforming and what was the extent or level of the use at that time.") (citations and footnote omitted).  We must also determine whether Applicant has discontinued the nonconforming use for more than six months (CZR § 2.12(A)(3)) or abandoned this nonconforming use (CZR § 2.12(A)(4)).  See <u>Badger v. Town of Ferrisburgh</u>, 168 Vt. 37, 41 (1998) (comparing discontinuing and abandoning a nonconforming use).

The facts necessary to make these determinations are unclear on the record before us.  We must therefore proceed to trial, so that we may make determinations on these disputed material facts. Furthermore, Applicant has not met its burden of showing its application either complies with the regulations or is exempt therefrom.  We therefore find that Applicant is not

---

[1] The parties do not dispute that both a 1986 U.S. Army Corps of Engineers letter and a 1986 State of Vermont permit state that "[t]he addition of 18 dock spaces will be offset by the removal of 18 moorings, leaving the marina with a total capacity of approximately 225 watercraft."  See Appellee's Exhibit C.  However, because Appellee's Exhibit H indicates amendments to the marina's permit from the State of Vermont between 1977 and 1986, the Court cannot conclude based on the materials in the record what number of berths were actually in existence as of 1979.  (Appellee's Exhibit H at 2.)

[2] Relying on <u>In re Miserocchi</u>, 170 Vt. 320, 327 (2000), Applicant also argues that an increase in the number of berths per parking spaces is not an extension of a nonconforming use.  (Appellee's Reply in Further Supp. of its Mot. for Summ. J. at 3, filed Dec. 11, 2013.)  It is important to note that the <u>Miserocchi</u> case itself involved a change from one permitted use to another permitted use within a noncomplying structure (based on setbacks).  The Vermont Supreme Court noted that other jurisdictions had concluded that the mere increase in the <u>amount</u> of a nonconforming business use is not an expansion of a nonconforming use.  <u>Miserocchi</u>, 170 Vt. at 327 (citing 1 K. Young, <u>Anderson's American Law of Zoning</u> §§ 6.38, 6.50 (4th ed. 1996); <u>DiBlasi v. Zoning Bd. of Appeals</u>, 224 Conn. 823 (1993)).  Applicant's parking arrangement is distinguishable; the use is nonconforming solely because it previously did not, and still does not, provide one space for each berth.  An increase to 300 berths while maintaining 100 parking spaces would be an <u>expansion</u> of the nonconformity just as much as maintaining a constant number of berths while decreasing the number of parking spaces.  If the number of parking spaces and berths regularly used increases, but the ratio of existing berths and parking spaces stays constant, there would be an increase in the amount of nonconforming business but no expansion of the nonconformity itself.

entitled to summary judgment as a matter of law, based upon the facts presently before the Court. We therefore await the parties' presentation at trial of the fact relevant to this legal issue.

For the reasons discussed more fully above, we find material facts remain in dispute. Because Applicant is not entitled to judgment as a matter of law, its motion for summary judgment is **DENIED.**

**So Ordered.**

Electronically signed on April 16, 2014 at 04:16 PM pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division

Notifications:
Joseph P. Bauer (ERN 4514), Attorney for Appellants Maurice P. Germain, Jeanne M. Germain,
   Peter B. Hill, Julia L. Weaver, and The Moorings, Inc.
Nicole A. Killoran, Co-counsel for Appellants
Robert F. O'Neill (ERN 2991), Attorney for Appellee SP Cove LLC d/b/a Bay Harbor Marina, Inc.
Matthew S. Stern (ERN 5743), Co-counsel for Appellee SP Cove d/b/a Bay Harbor Marina, Inc.
Claudine C. Safar (ERN 3985), Attorney for Interested Person Town of Colchester
Courtney E. Butler (ERN 5095), Co-counsel for Interested Person Town of Colchester